Approved: _____
DREW JOHNSON-SKINNER
Assistant United States Attorney

U.S. DISTRICT COURT
FILED
MAR 04 2016
S.D. OF N.Y.

ORIGINAL

DOC #____

Before:   HONORABLE JAMES C. FRANCIS IV
          United States Magistrate Judge
          Southern District of New York

16 MAG 1515

- - - - - - - - - - - - - - - - x
                                 :
UNITED STATES OF AMERICA         :   **SEALED COMPLAINT**
                                 :
         - v. -                  :   Violations of
                                 :   18 U.S.C. §§ 641, 1028(A),
ANDRE MARIE NGONO,               :      1343 & 2;
  a/k/a "Luc O. Ndi,"            :   20 U.S.C. § 1097
  a/k/a "Luc Owono Ndi,"         :
  a/k/a "Luc Ndi,"               :   COUNTY OF OFFENSE:
                                 :   NEW YORK
                                 :
         Defendant.              :
                                 :
- - - - - - - - - - - - - - - - x

SOUTHERN DISTRICT OF NEW YORK, ss.:

     CONOR O'SULLIVAN, being duly sworn, deposes and says that
he is a Special Agent with the Federal Bureau of Investigation
("FBI") and charges as follows:

## COUNT ONE
### (Theft of Government Funds)

     1.   From at least in or about March 2011 up to and
including at least in or about September 30, 2015, in the
Southern District of New York and elsewhere, ANDRE MARIE NGONO,
a/k/a "Luc O. Ndi," a/k/a "Luc Owono Ndi," a/k/a "Luc Ndi," the
defendant, did knowingly embezzle, steal, purloin, and convert
to his use and the use of another, and without authority, did
sell, convey, and dispose of records, vouchers, money, and
things of value of the United States and a department and agency
thereof, to wit, the United States Department of Education
("U.S. ED"), which exceeded the sum of $1,000, and did receive,
conceal, and retain the same with intent to convert it to his
use and gain, knowing it to have been embezzled, stolen,
purloined and converted, to wit, NGONO submitted false
identifying information to the U.S. ED, which caused the U.S. ED
to issue thousands of dollars in federal student financial aid

to NGONO.

(Title 18, United States Code, Sections 641 and 2.)

## COUNT TWO
### (Theft of Government Funds)

2.    From at least in or about September 2011 up to and
including at least in or about February 2012, in the Southern
District of New York and elsewhere, ANDRE MARIE NGONO, a/k/a
"Luc O. Ndi," a/k/a "Luc Owono Ndi," a/k/a "Luc Ndi," the
defendant, did knowingly embezzle, steal, purloin, and convert
to his use and the use of another, and without authority, did
sell, convey, and dispose of records, vouchers, money, and
things of value of the United States and a department and agency
thereof, to wit, the United States Department of Labor ("U.S.
DOL"), which exceeded the sum of $1,000, and did receive,
conceal, and retain the same with intent to convert it to his
use and gain, knowing it to have been embezzled, stolen,
purloined and converted, to wit, NGONO fraudulently obtained
thousands of dollars in unemployment insurance benefits through
the New York State Unemployment Insurance Fund, which were
funded by the U.S. DOL.

(Title 18, United States Code, Sections 641 and 2.)

## COUNT THREE
### (Wire Fraud)

3.    From at least in or about March 2011 up to and
including at least in or about September 30, 2015, in the
Southern District of New York and elsewhere, ANDRE MARIE NGONO,
a/k/a "Luc O. Ndi," a/k/a "Luc Owono Ndi," a/k/a "Luc Ndi," the
defendant, willfully and knowingly, having devised and intending
to devise a scheme and artifice to defraud, and for obtaining
money and property by means of false and fraudulent pretenses,
representations, and promises, did transmit and cause to be
transmitted by means of wire, radio, and television
communication in interstate and foreign commerce, writings,
signs, signals, pictures, and sounds, for the purpose of
executing such scheme and artifice, to wit, NGONO transmitted
false identifying information to the United States Department of
Education ("U.S. ED") through the use of interstate electronic
communications, which caused the U.S. ED to issue thousands of
dollars in student financial aid to NGONO.

(Title 18, United States Code, Sections 1343 and 2.)

2

## COUNT FOUR
### (Student Financial Aid Fraud)

4.   From at least in or about March 2011 up to and including at least on or about September 30, 2015, in the Southern District of New York and elsewhere, ANDRE MARIE NGONO, a/k/a "Luc O. Ndi," a/k/a "Luc Owono Ndi," a/k/a "Luc Ndi," the defendant, knowingly and willfully embezzled, misapplied, stole, obtained by fraud, false statement, and forgery, and failed to refund any funds, assets, and property provided and insured under Subchapter IV of Title 20, United States Code and Part C of Subchapter I of Chapter 34 of Title 42, United States Code, to wit, NGONO submitted false identifying information to the United States Department of Education in order to fraudulently obtain thousands of dollars in federal student financial aid.

(Title 20, United States Code, Section 1097; and Title 18, United States Code, Section 2.)

## COUNT FIVE
### (Aggravated Identity Theft)

5.   From at least in or about March 2011 up to and including at least in or about September 30, 2015, in the Southern District of New York and elsewhere, ANDRE MARIE NGONO, a/k/a "Luc O. Ndi," a/k/a "Luc Owono Ndi," a/k/a "Luc Ndi," the defendant, knowingly did transfer, possess, and use, without lawful authority, a means of identification of another person, during and in relation to a felony violation enumerated in Title 18, United States Code, Section 1028A(c), to wit, NGONO used the name, Social Security Number, date of birth, and other means of identification of another person in connection with the theft of Government funds offenses charged in Counts One and Two of this Complaint and the wire fraud offense charged in Count Three of this Complaint.

(Title 18, United States Code, Sections 1028A(a)(1), 1028A(b), and 2.)

The bases for my knowledge and for the foregoing charges are, in part, as follows:

6.   I am a Special Agent with the FBI.  I have been personally involved in the investigation of this matter.  This Complaint is based upon my conversations with law enforcement agents, witnesses, and others, as well as my examination of

reports and records.  Because this Complaint is being submitted
for the limited purpose of establishing probable cause, it does
not include all the facts that I have learned during the course
of my investigation.  Where the contents of documents and the
actions, statements, and conversations of others are reported
herein, they are reported in substance and in part, except where
otherwise indicated.  Where figures, calculations, and dates are
set forth herein, they are approximate, unless stated otherwise.

## Background on the Investigation

7.    In or about August 2014, the FBI began an
investigation into the fraudulent use of the identity of a
certain individual ("Victim-1") by ANDRE MARIE NGONO, a/k/a "Luc
O. Ndi," a/k/a "Luc Owono Ndi," a/k/a "Luc Ndi," the defendant.
Based on that investigation, and as set forth below, there is
probable cause to believe that NGONO fraudulently used the
identity of Victim-1 to, among other things: (1) obtain
thousands of dollars in federal student aid funds; and (2)
obtain thousands of dollars in unemployment insurance benefits
funded by the federal government.

## Background on Federally Funded Student Aid

8.    At all times relevant to this Complaint, the United
States Department of Education ("U.S. ED") was a department and
agency of the United States government charged with primary
responsibility for administering federal financial aid programs
to students under the auspices of the Federal Direct Stafford
Loan program ("Stafford Loans"), Federal Perkins Loan program
("Perkins Loans"), and the Federal Pell Grant program ("Pell
Grants"), all of which involve funds provided or insured under
Subchapter IV of Title 20, United States Code, and/or Part C of
Subchapter I of Chapter 34 of Title 42, United States Code.

9.    The U.S. ED offers financial aid to qualifying
undergraduate students, including Stafford Loans, Perkins Loans,
and Pell Grants.  A Stafford Loan is a loan funded by the U.S.
ED that an eligible undergraduate student may use to pay
educational expenses.  A Perkins Loan is a loan funded by the
U.S. ED and participating schools and is available for students
identified as exceptionally financially needy.  Pell Grants are
direct, need-based grants to eligible students for educational
expenses that do not need to be repaid.

10.  Students apply for federal student aid, including for
Stafford Loans, Perkins Loans, and Pell Grants, by filling out

4

the Free Application for Federal Student Aid ("FAFSA"), which
can be electronically submitted to the U.S. ED.  U.S. ED program
regulations specify eligibility requirements for receiving
federal student aid, including the requirement that
undergraduate students must provide their assigned Social
Security Number and other personal identifying information.  The
submission of a FAFSA to the U.S. ED results in a calculation of
the student's expected family contribution to the cost of
education.  The student's educational institution, acting on
behalf of the federal government, then uses that calculation to
determine the amount of federal financial aid that may be
awarded to the student each academic year.  Once the amount of
the student's federal financial aid is determined, the
educational institution may apply for the disbursement of
financial aid funds for the student from the U.S. ED.

     11.  At all times relevant to this Complaint, University-1
was a university system with its main offices in New York, New
York, and with various colleges operating in New York City.
University-1 was an eligible participant in the U.S. ED's
Stafford Loan, Perkins Loan, and Pell Grant programs.

     12.  At all times relevant to this Complaint, when
University-1 received federal financial aid funds from the U.S.
ED on behalf of a University-1 student, the funds were deposited
into a University-1 bank account located in New York, New York.
When University-1 received funds on behalf of a student,
University-1 first paid the student's tuition with the funds and
then forwarded any excess money to the student.  If a
University-1 student did not have a bank account into which any
excess financial aid money could be deposited, University-1
loaded the money onto the student's "Scholar Card."

     13.  The Scholar Card was a pre-loaded debit card provided
to University-1 students by Company-1, a global bank
headquartered in New York, New York.  University-1 students
could use Scholar Cards anywhere debit cards were accepted and
could withdraw U.S. currency from ATMs using the Scholar Cards.

## Background on Unemployment Insurance

     14.  The Social Security Act of 1935 established a federal
and state unemployment insurance system designed to provide
benefits to certain persons who are unemployed.  Each state
administers a separate unemployment insurance benefits program
with guidelines established by federal law.  The United States
Department of Labor ("U.S. DOL") exercises general oversight
over the unemployment insurance program to ensure that the

program is run efficiently, and is responsible for determining that state operated programs are in conformity with federal and state law.

15. In New York, the New York State Unemployment Insurance Fund ("NYSUIF") is operated by the New York State Department of Labor ("N.Y. DOL"). The N.Y. DOL determines whether an unemployed worker qualifies for unemployment insurance benefits under applicable law.

16. Funds for NYSUIF benefits come from taxes paid by employers as well as from the federal government. The federal government provides loans to the N.Y. DOL and funds certain supplemental unemployment insurance benefits through NYSUIF. For example, beginning in or about July 2008 and continuing through at least on or about January 1, 2014, the federal government supplemented unemployment insurance benefits paid by NYSUIF through the Emergency Unemployment Compensation ("EUC") program.

17. An initial claim for NYSUIF benefits must be submitted via telephone or the Internet. The claimant must provide certain information, including his or her name, date of birth, Social Security number, name and address of employer, dates of employment, and the reason the employment ended.

18. Between at least in or about 2011 and at least in or about 2012, a claimant for NYSUIF benefits could elect to receive a debit card through which the claimant's NYSUIF benefits could be accessed. Debit-card transactions involving NYSUIF unemployment insurance benefits paid to qualifying claimants were processed by Company-2, a global bank located in New York, New York.

## Background on the Defendant and Victim-1

19. Based on my review of records provided by the Department of State and the Department of Homeland Security, Immigration and Customs Enforcement, I know that ANDRE MARIE NGONO, a/k/a "Luc O. Ndi," a/k/a "Luc Owono Ndi," a/k/a "Luc Ndi," the defendant, is a native of Cameroon and obtained a tourist visa for entry into the United States on or about December 6, 2006. In connection with that visa, NGONO was photographed by the Department of State (the "NGONO Visa Photograph").

20. Based on my review of information available in law enforcement databases and court records, I have learned that on

or about December 30, 2010, ANDRE MARIE NGONO, a/k/a "Luc O. Ndi," a/k/a "Luc Owono Ndi," a/k/a "Luc Ndi," the defendant, was arrested by the New York City Police Department ("NYPD") at a certain residential address in Queens, New York ("Address-1") for assault and other offenses.

21.  Based on my conversations with Victim-1, I have learned, among other things, the following:

a.    Victim-1 is a naturalized United States citizen who was born in Cameroon.

b.    From in or about 2002 to in or about 2005, Victim-1 lived in a property owned by a church located in New York, New York ("Church-1").  In or about 2005, Victim-1 moved out of Church-1's property, but Victim-1 continued to volunteer at and attend Church-1 until in or about 2007.

c.    In or about 2005 or 2006, ANDRE MARIE NGONO, a/k/a "Luc O. Ndi," a/k/a "Luc Owono Ndi," a/k/a "Luc Ndi," the defendant, attended Church-1.  During the time Victim-1 and NGONO both attended Church-1, NGONO, in sum and substance, asked Victim-1 for his identification documents so that NGONO could obtain employment in the United States.  Victim-1 did not provide his identification documents to NGONO.

d.    During the time that NGONO attended Church-1, Church-1 kept Victim-1's personal identifying information, including Social Security Number and date of birth, on file.

## The Defendant's Fraudulent Procurement of Identification Cards in Victim-1's Name

22.  Based on my review of documents provided by the New York State Department of Motor Vehicles ("N.Y. DMV"), I have learned, among other things, the following:

a.    On or about July 27, 2009, the N.Y. DMV issued an identification card in Victim-1's name (the "N.Y. State ID Card") based on an application submitted to the N.Y. DMV in or about July 2009.  The individual who submitted the application for the N.Y. State ID Card used Victim-1's name, date of birth, and Social Security Number.  The address listed on the application for the N.Y. State ID Card is Address-1, the same address at which ANDRE MARIE NGONO, a/k/a "Luc O. Ndi," a/k/a "Luc Owono Ndi," a/k/a "Luc Ndi," the defendant, was arrested on or about December 30, 2010.

23.  I have spoken with Victim-1 about the N.Y. State ID Card, and Victim-1 has informed me, in sum and substance, that Victim-1 did not apply for the N.Y. State ID Card.  Victim-1 further stated, in sum and substance, that Victim-1 has never lived at or used Address-1.

24.  I have reviewed records provided by the New York City Fire Department ("FDNY") relating to a Certificate of Fitness issued in Victim-1's name (the "FDNY Certificate"). Certificates of Fitness are required to conduct certain businesses in New York City.  The FDNY's records indicate that Victim-1's date of birth, Victim-1's Social Security Number, and Address-1 were used to obtain the FDNY Certificate.  I have reviewed a photograph taken and maintained by the FDNY of the individual who obtained the FDNY Certificate (the "FDNY Photograph").  The FDNY Photograph appears to be of the same individual as depicted in the NGONO Visa Photograph.

### Unemployment Insurance Fraud

25.  Based on my conversations with other law enforcement officers and my review of records provided by the N.Y. DOL, I have learned, among other things, the following:

a.  On or about February 14, 2011, an individual using Victim-1's name submitted an application to the N.Y. DOL for unemployment insurance benefits (the "Unemployment Insurance Application").  The Unemployment Insurance Application used Victim-1's Social Security Number and Victim-1's date of birth.

b.  As a result of the Unemployment Insurance Application, the N.Y. DOL issued a debit card in Victim-1's name (the "N.Y. DOL Debit Card") and mailed the card to a certain address in Queens, New York.  The N.Y. DOL Debit Card transactions were processed by Company-2.  From in or about March 2011 to in or about May 2012, the N.Y. DOL funded the N.Y. DOL Debit Card with approximately $9,000 in unemployment insurance benefits.  From in or about September 2011 to February 2012, through the EUC program, the U.S. DOL provided approximately $3,900 of the funds that were placed on the N.Y. DOL Debit Card.

c.  On or about April 5, 2011, the individual using the N.Y. DOL Debit Card used it to pay a $65 fee to apply to a University-1 college.

26.  Based on my conversations with Victim-1, I have

8

learned, among other things, the following:

    a.   Victim-1 has never applied for nor collected New York State unemployment insurance benefits.

    b.   In or about August 2013, Victim-1 appeared before a N.Y. DOL Administrative Law Judge to explain that Victim-1 had never applied for nor collected New York State unemployment insurance benefits.

## The Defendant's Use of Victim-1's Identity
## to Attend University-1

    27.   Based on my review of University-1 records, I know that an individual using Victim-1's name has attended classes at various colleges that are part of University-1 from in or about 2011 through in or about March 2016.  Each college that the individual using Victim-1's name attended issued a Student ID Card to the student in Victim-1's name that included a photograph of the student (the "Student ID Cards").

    28.   I have spoken to Victim-1 about University-1, and Victim-1 has informed me, in sum and substance, that Victim-1 has never enrolled in or attended a college that is part of University-1.

    29.   Based on my communications with University-1 officials and my review of documents provided by University-1, I have learned, among other things, that on or about October 15, 2015, inside a University-1 college classroom building, an employee of University-1 took photographs of the individual attending classes under Victim-1's name.  The individual who was photographed was asked for identification by a University-1 campus security officer and produced one of the Student ID Cards issued in Victim-1's name.

    30.   I have reviewed: (1) the NGONO Visa Photograph; (2) the FDNY Photograph; (3) the photographs taken on or about October 15, 2015, of the individual attending classes at a University-1 college in the name of Victim-1; and (4) the photographs on the University-1 Student ID Cards issued in the name of Victim-1.  The photographs all appear to depict the same individual.

    31.   I have shown Victim-1 one of the photographs on a Student ID Card issued in Victim-1's name.  Victim-1 recognized the person in the photograph as "Andre Ngono."

## The Defendant's Use of Victim-1's Identity
## to Obtain Federal Student Aid Funds

32.   Based on my review of records provided by University-1, Company-1, and the U.S. ED, and based on my conversations with representatives of University-1 and the U.S. ED, I have learned, among other things, the following:

a.   On or about March 31, 2011, an individual using Victim-1's name submitted a FAFSA to the U.S. ED for federal student aid (the "Application").  In addition to Victim-1's name, the Application used Victim-1's Social Security Number and Victim-1's date of birth.

b.   According to records maintained by the U.S. ED, the Application was submitted electronically to the U.S. ED from a computer with an IP address located in New York City.  The Application was electronically sent to ED's computer servers located in Plano, Texas.

c.   From in or about March 31, 2011, to in or about January 15, 2015, the individual using Victim-1's name electronically submitted annual FAFSA applications to the U.S. ED, with updates as necessary, in order to request federal student aid.  In response to those applications, the U.S. ED awarded Stafford Loans, Perkins Loans, and Pell Grant funds in Victim-1's name.  University-1, via interstate electronic communications sent from University-1's main offices in New York, New York, to the U.S. ED's computer serves in Plano, Texas, requested that the ED distribute the funds allocated in Victim-1's name to University-1.  The U.S. ED, as a result, caused the funds to be transferred to University-1's bank account.  University-1, in turn, paid the tuition of the individual using Victim-1's name and placed the remaining funds on that individual's Scholar Card.

d.   For example, on or about March 11, 2014, the U.S. ED sent to University-1 $2,198.50 in Pell Grant funds allocated for the individual using Victim-1's name.

e.   In total, from in or about August 30, 2011, to in or about September 30, 2015, the U.S. ED provided at least approximately $44,000 in Stafford Loans, $1,200 in Perkins Loans, and $25,000 in Pell Grant funds to University-1 on behalf of the individual using Victim-1's name.

10

f.    After receiving these funds, University-1 paid a
total of approximately $25,000 in tuition for the individual
using Victim-1's name and dispensed the excess funds to that
individual by placing funds on the Scholar Card issued in
Victim-1's name.

g.    Specifically, from on or about August 31, 2011,
to on or about June 23, 2015, University-1 loaded approximately
$46,000 onto a Scholar Card in Victim-1's name.

h.    Records provided by Company-1, which administers
the Scholar Cards, list a certain mobile phone number for the
account of the Scholar Card in Victim-1's name ("Phone-1").
Based on my review of records provided by the service provider
for Phone-1, I know that the subscriber name for Phone-1 is
"andre [no middle name] ngono."

i.    Based on the fact that the defendant is currently
enrolled at University-1, I believe that the defendant is
continuing to fraudulently receive federal financial aid through
the present date, and the FBI is awaiting records confirming
that the defendant continues to receive such funds.

33.    Based on my conversations with Victim-1 and my review
of Victim-1's credit report, I have learned, among other things,
the following:

a.    Victim-1 has never applied for nor received any
federal financial aid.

b.    In or about September 2013, Victim-1 checked
Victim-1's credit report and found that Victim-1 owed thousands
of dollars in student loans that Victim-1 did not apply for or
receive.  Victim-1's credit report indicated that the loans were
used to attend University-1 colleges.  In response, Victim-1
contacted University-1 to report the fraud.

WHEREFORE, I respectfully request that an arrest warrant be issued for ANDRE MARIE NGONO, a/k/a "Luc O. Ndi," a/k/a "Luc Owono Ndi," a/k/a "Luc Ndi," the defendant, and that he be arrested and imprisoned or bailed, as the case may be.

_____
CONOR O'SULLIVAN
Special Agent
Federal Bureau of Investigation

Sworn to before me this
__4th__ day of March 2016

_____
HONORABLE JAMES C. FRANCIS IV
UNITED STATES MAGISTRATE JUDGE
SOUTHERN DISTRICT OF NEW YORK

12